## THE STATE OF MAINE *vs.* JAMES GOULD.

The State of Maine cannot maintain an action in this State, on a contract made before the revised statutes of that State took effect, with the warden of its state prison in his official capacity: Such action can be maintained, in this State only by the warden.

ASSUMPSIT for goods sold and delivered ; also for goods bargained and sold, which the defendant refused to receive and pay for. Writ dated November 22d 1843. Trial before *Shaw*, C. J. who made a report thereof, in substance as follows :

The case stated in behalf of the plaintiffs was, that in 1840 he defendant entered into a sealed contract with Benjamin Carr, then warden of the state prison of Maine, for the purchase of a large quantity of lime rock, to be quarried and delivered on a wharf at Thomaston, to be paid for in such goods as were purchased for consumption and use in said prison, and the balance, if any, in cash ; that the warden and officers of said prison proceeded to get out the stipulated quantity of lime rock, and had it ready for delivery at the said wharf ; that the defendant took a small part of it, but refused to send for and take the remainder ; alleging that the quality thereof was not such as to suit his customers or himself.

The plaintiffs stated that they were prepared to prove that the stone got out and made ready for the defendant was of good quality, according to contract. And they offered in

evidence, and relied upon, such a contract as they had stated to be the ground of their action.

The defendant objected, that this action could not be maintained by the State, on this contract, although the warden of the state prison was a state officer, and the state prison a public establishment, carried on at the expense and for the benefit of the State. 1st. Because, by the general rules of law, a suit on such a contract could be maintained only by the party to it. 2d. That by the laws of the State of Maine, as they existed when this contract was made and this action brought, the warden was the only party to sue and be sued on all contracts relating to the state prison. 3d. That neither the warden nor the State could recover in this form of action, but must set out the contract specially in the declaration.

The judge ruled that the action could not be maintained by the State, nor in the form adopted ; whereupon the plaintiffs became nonsuit, subject to the opinion of the whole court on the question whether the action could be maintained by the plaintiffs in any form of declaration.

*J. Ruggles*, of Maine, *& J. P. Rogers*, for the plaintiffs.

*C. G. Loring & Dehon*, for the defendant.

HUBBARD, J. The general rule of law, that public agents are not personally liable upon contracts made by them for the government, is perfectly well settled. But there are exceptions to it ; as in those cases where the party, notwithstanding his agency, and though acting for his principal, personally binds himself. *Horsley* v. *Bell*, 1 Bro. C. C. 101, *note.* *Sheffield* v. *Watson*, 3 Caines, 69. *Gill* v. *Brown*, 12 Johns. 385. Or where the law under which the agent is appointed makes him personally responsible to those persons with whom he contracts for the government.

In the present instance, the contract is made by and with Carr, as warden of the Maine State Prison; and the case depends upon the construction to be given to the acts of the State of Maine in relation to the duties and obligations of the warden as to contracts entered into by him in his capacity of warden, taken in connexion with the *lex fori* where the suit upon the contract is prosecuted.

19 *

The Maine *St.* of 1824, *c.* 282, § 6, directs that "all contracts ·relative to the employment of the convicts within the prison, or the precincts thereof, or for the supply of any articles of food or manufacture within the same, or for the sale of any articles, tools and manufactures, which may belong to said prison, shall be made by and with the warden of ·said prison, or the inspectors, or such other officers thereof as the governor, with the advice of the council, shall direct ; and any suit upon any " such " contract shall and may be commenced, and prosecuted to final judgment and execution, by and in the name of said warden."

This act is specific as to the right and duty of the warden personally to contract and to prosecute in his own name ; yet no remedy against him is given to the party contracting with him. To meet this deficiency, the *St.* of 1830, *c.* 477, was passed, and· § 5 provided " that all actions founded on any contract with the warden, in said capacity, may be brought against the warden for the time being," &c. ; " provided, however, that neither the person nor the property of the warden shall be taken or attached in any such suits, nor shall any writ of execution issue against him upon the judgment therein, but the same may stand as an ascertained claim against the State."

The object of these statutes is very express. The institution over which the warden is placed is a working establishment, and the convicts confined in it are compelled to labor, as well to promote in them habits of industry, and to teach them useful trades, as to make them provide for their own support. To accomplish this, the warden is empowered to contract for their labor, and for articles made by them, and to enter into prospective engagements for their employment in the service of others. To hold out inducements for persons to enter into such engagements, he is required to make the contracts with them in his own name, which he may enforce by suits, when necessary. On the other hand, to place the contracting party upon an equality of rights, he is authorized to sue the warden, when he thinks he has just cause of complaint.

And though the warden is not personally answerable in case judgment is rendered against him, yet such judgment shall stand as an ascertained claim against the State.

These provisions of the law confer upon the warden the power, and enjoin upon him the duty, of making contracts and enforcing them, in his own name, and subject him to the liability of being sued, in case of breach of contract on his part ; conferring upon him, in his official capacity, many of the important powers of a sole corporation.

The contract now in suit was made by the warden in his own name, in his official capacity, within the scope of his authority, and by force of the statutes referred to, and under which he derived his power to contract. And it was admitted, in the argument for the plaintiffs, that but for the revised statutes of the State of Maine, the duty of the warden to sue in his own name would be imperative ; but it is also asserted that by such revision the previous statutes are so far modified as to make the prosecution of suits in the name of the warden permissive only.

The language of the revised statutes on this subject, *c.* 177, § 22, which repeal former acts, is as follows: " All actions founded on any contract, made with the warden in his official capacity, may be brought by or against the warden for the time being ; and any actions for injuries done or occasioned to the real or personal property belonging to the State, and appropriated to the use of the state prison, or being under the management of the warden thereof, may be prosecuted in the name of the warden for the time being ; and no such action shall abate by the warden's ceasing to be in office ; but his successor, upon notice, shall be required to assume the prosecution or defence of the same. In said actions, the warden shall be a competent witness, and neither his person nor property shall be taken or attached in any such suit, nor shall any execution issue against him on any judgment therein, but such judgment shall stand as an ascertained claim against the State." And it is contended, from the use of the word " may," that the pursuit of the remedy in the name

State of Maine *v.* Gould.

of the warden is alternative, and so the State may cause con-
tracts made by him to be sued in their own name, if they
see fit ; and an ingenious argument has been made in support
of it.   But, though ingenious, it does not satisfy us as to the
construction contended for ; and we are inclined to the opin-
ion that the new act is but a revision of the former statutes,
consolidating them into one, without intending any alteration
of those parts which prescribed the warden's duties on the
subject of making and enforcing contracts.   The word "may"
applies equally to the contractor as to the warden ; and there
are combined in one paragraph rights and liabilities which
before were contained in different statutes.   The belief that
the law was not intended to be altered is strengthened also
by the consideration, that the warden's successors are ("shall
be ") required to assume the prosecution or defence of suits ;
from which it is to be inferred that the previous warden was
understood to be the party to the record, as well plaintiff as
defendant.   And it is not to be overlooked, that the word
" may " is often construed "shall," where the obvious mean-
ing of the statute or instrument requires it.

But it is unnecessary to go at length into a comparison of
the previous acts with the revised statutes, because we are of
opinion that the revised statutes do not affect the contract
now in suit ; it having been made previous to the revision.
That the contract cannot be affected is certain, because the
States are prohibited from making laws impairing the obliga-
tion of contracts.   But if a change was intended to be made,
it was only in enlarging the remedy given to enforce con-
tracts, by permitting a suit to be brought either in the name
of the State or of the warden, at the pleasure of the State or
the warden.   But specific remedies can only be enforced in
the State which gives them validity.   They do not accom-
pany the contract and cause of action into a foreign State,
when it is attempted to be enforced there.   The remedies
afforded by the foreign tribunal, in such case, can alone be
pursued.

The contract now in suit was made by and with the

warden, and when made could only be enforced by a suit in his name. An act has since passed in the State of Maine, which, it is said, enlarges the remedy there of one of the contracting parties. But admitting this to be correct, it does not affect the contract ; and by the principles of the common law, such a contract can be sued, in this State, only in the name of him who made it, or his legal representative ; and consequently a suit cannot be maintained here, upon the contract, in the name of the State.

Similar laws exist in this Commonwealth, as to the rights and liabilities of the warden of the state prison, and he, in like manner, is held to be the proper party to the record, and not the Commonwealth. See *Commonwealth* v. *Phœnix Bank,* (*ante,* 138, 139.)

Upon these considerations, we are of opinion that no action can be maintained in the name of the State of Maine upon the contract now in suit. It is unnecessary, therefore, to discuss the objection to the form of declaring.

*Nonsuit to stand.*